UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEER CAPITAL MANAGEMENT LP,<br><br>Plaintiff,<br><br>v.<br><br>CREDITO LOMBARDO VENETO S.P.A.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

Plaintiff Seer Capital Management LP ("Seer"), by and through its undersigned attorneys, brings this action for a declaratory judgment against Defendant Credito Lombardo Veneto S.p.A. ("Credito Lombardo"), and for its Complaint alleges as follows:

**NATURE OF THE CASE**

1.  This action arises out of Defendant Credito Lombardo's baseless attempt to recover millions of dollars in investment losses from Plaintiff Seer by treating mere statements of intent made by Seer in certain comfort letters as a binding contractual guaranty. But Seer made no commitments whatsoever in those letters, let alone one that would require Seer to assume all of Credito Lombardo's investment risk.

2.  Seer is an investment firm based in New York that manages or advises private funds which invest primarily in structured credit and loans, including two investment funds that jointly own non-party S.C.O. ILoans LLC ("SCO"). Seer thus also manages SCO, which holds over 90 percent of the share capital of MCE Finance S.p.A. ("MCE"), a financial intermediary incorporated under the laws of the Republic of Italy.

3. Credito Lombardo lent MCE millions of dollars under a series of credit facilities and related agreements (collectively, the "Agreements"). When MCE's business later collapsed in January 2025, MCE defaulted on its contractual obligations under those Agreements. As a result, Credito Lombardo purportedly suffered the losses at issue in this action.

4. In connection with Credito Lombardo's financing commitment, Seer provided it with a comfort letter in February 2021. That letter stated that Seer was "aware of the terms and conditions negotiated and under negotiation between MCE [] and Credito Lombardo Veneto and intends to continue with its normal practice of causing S.C.O. Iloans to support the obligations of MCE [], including those undertaken under the Agreements [between Credito Lombardo and MCE]."

5. Seer later provided two substantively identical comfort letters to Credito Lombardo in connection with extensions of the Agreements governing its lending relationship with MCE. Specifically, in both 2022 and 2023, Seer reiterated its intent to "continue with its normal practice" of causing SCO to support MCE's obligations.

6. Notably, when Credito Lombardo agreed to extend the Agreements again the following year, Seer did not, as it had in each of the prior two years, provide an updated comfort letter. In fact, Credito Lombardo did not even request such a letter in connection with the February 2024 renewal of its Agreements with MCE, even though each of Seer's prior comfort letters specifically identified the proposed agreements with respect to which Credito Lombardo sought the letters. In other words, none of the comfort letters covers the 2024 renewal of the Agreements.

7. In any event, Seer indisputably did what it stated it would do in each of its three comfort letters, continuing to cause SCO to support MCE's obligations until in or around September 2024, when MCE's worsening financial condition rendered further contributions

untenable. In fact, Seer directed the injection of *more than €12 million* into MCE *after* providing its first comfort letter, at least €5 million of which was contributed *after* Seer provided its third and final comfort letter in April 2023.

8. Notwithstanding Seer's substantial support, MCE's deteriorating financial condition ultimately left it without the working capital necessary to fund its operations.

9. As a result of MCE's failure, investment vehicles managed by Seer lost well over €25 million it invested in the company between 2014, when SCO acquired MCE, and 2024. Adding insult to injury, Defendant now claims Seer effectively agreed to fully indemnify it for any losses arising out of its financing arrangements with MCE.

10. For most of the past year, Credito Lombardo has been threatening to assert claims against Seer to recover MCE's outstanding debt under the Agreements. Most recently, Credito Lombardo's new chief executive officer claimed Seer "explicitly" made a "commitment" in the comfort letters to provide MCE with financial support.

11. Credito Lombardo is wrong. The comfort letters do not contain any undertaking by Seer. Instead, they merely state Seer intended to continue with its normal practice of causing SCO to support MCE's obligations. Seer did not commit to do *anything* in those letters. Indeed, under well-settled New York law, Seer's statement of intent did not create a binding commitment to guaranty MCE's obligations.

12. The Court should enter a judgment declaring that Seer made no binding commitments in the comfort letters and, therefore, has no obligation to (i) provide, or cause SCO to provide, any additional financial support to MCE or (ii) compensate Credito Lombardo for any losses purportedly caused by MCE's failure to satisfy its obligations under the Agreements.

**PARTIES**

13. Plaintiff Seer Capital Management LP is a Delaware limited partnership with its principal place of business in New York, New York. No partner of Seer is a citizen of Italy. Likewise, there is no citizen of Italy with an ownership interest in any entity anywhere across Seer's ownership structure.

14. Since 2009, Seer has been registered with the U.S. Securities and Exchange Commission (the "SEC") as an investment adviser pursuant to the Investment Advisers Act of 1940.

15. Defendant Credito Lombardo Veneto S.p.A. is a bank incorporated under the laws of the Republic of Italy, with a registered office at Via Orzinuovi, 75 Brescia, Italy.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

17. This Court has personal jurisdiction over Defendant Credito Lombardo Veneto S.p.A under New York CPLR § 302(1) because it regularly transacts business within New York, including by engaging with Seer regarding its arrangements with MCE, including the comfort letters at issue here.

18. Credito Lombardo is registered with the Internal Revenue Service pursuant to the Foreign Account Tax Compliance Act ("FATCA"), which provides foreign financial institutions with the ability to claim an exemption from the 30 percent withholding tax on payments to or from U.S.-based customers by complying with certain reporting requirements regarding the assets and activities of such customers. Credito Lombardo's FATCA registration establishes its involvement

in the transmittal of funds to and from the United States. Upon information and belief, most, if not all, of Credito Lombardo's transfers are sent from, received in, or, at the very least, routed through New York.

19. Upon information and belief, Credito Lombardo maintains a relationship with a correspondent or intermediary bank in New York that provides the infrastructure needed for Credito Lombardo to efficiently transact business within the U.S. financial system, including use of its banking network to process transfers of funds to and from this country.

20. Credito Lombardo's contacts with New York extend beyond the transmittal of funds into the state. For example, Credito Lombardo's website highlights its long-term relationships with a number of prominent New York-based investment firms, including "partners" Morgan Stanley Investment Management, J.P. Morgan Asset Management, and BlackRock. Credito Lombardo also has engaged a New York-based litigator in connection with this dispute.

21. Additionally, Credito Lombardo's counsel at Dorsey & Whitney LLP asserted in a demand letter to Seer (copying that New York litigator) that Credito Lombardo's claims are "actionable" under New York law.

22. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in New York City. Seer revised and executed the comfort letters in its New York office. And to the extent it has any obligations under those letters, any such obligations would be performed in New York. Thus, venue is proper in this district, even if it also might be proper in other districts. *See Largotta v. Banner Promotions, Inc.*, 356 F.Supp.2d 388, 390 (S.D.N.Y. 2005).

## **FACTS**

23.     Founded in 2008 and registered with the SEC since the following year, Seer manages and advises its domestic and offshore hedge funds and other private investment vehicles, primarily through a master-feeder structure commonly employed by investment managers. Seer allocates capital opportunistically across all major asset classes within structured credit in the U.S. and Europe, including bank regulatory capital risk transfer, residential and commercial mortgages and securities, collateralized loan obligations, syndicated and small-and-medium-sized enterprise loans, and a variety of consumer loans (personal, auto, credit card, student, housing). The firm executes these investments through trading in both secondary and new-issue securitizations, the purchase and securitization of whole loans, and direct-lending joint ventures. As of December 31, 2025, Seer had approximately $1.1 billion in assets under management and advisement across the private funds and other investment vehicles it supports.

24.     Two of those funds—Seer Capital Partners Master Fund LP, and the Seer Capital Opportunities Master Fund I LP—co-own SCO, the Seer-managed limited liability company that holds more than 90 percent of MCE's share capital. SCO acquired that equity position in MCE, which specialized in making salary and pension-backed loans, from the company's founder in 2014.

25.     In January 2021, MCE entered discussions with Credito Lombardo regarding a potential financing transaction by which Credito Lombardo would provide MCE with access to funds for use in originating the personal loans on which MCE focuses its business. By the end of that month, MCE and Credito Lombardo were nearing agreement on the material terms of the contemplated financing transaction.

26. Around that time, Credito Lombardo requested MCE provide a comfort letter from its majority shareholder.

27. On January 29, 2021, MCE provided a proposed draft of that letter to Seer. The draft contained the following language: "Seer Capital is aware of the terms and conditions negotiated and under negotiation between MCE Locam and Credito Lombardo Veneto and will make its best effort to ensure that MCE Locam meets the obligations undertaken under the Agreements."

28. Based on concerns that proposed language could be interpreted as imposing obligations on it, Seer rejected the initial draft.

29. On February 1, 2021, Seer proposed the following revised language: "Seer Capital is aware of the terms and conditions negotiated and under negotiation between MCE Locam and Credito Lombardo Veneto and intends to continue with its normal practice of causing S.C.O lloans to supports [sic] the obligations of MCE Locam, including those undertaken under the Agreements."

30. Later that same day, Seer executed the first of three substantively identical comfort letters it ultimately provided to Credito Lombardo. The execution version of the February 1 comfort letter contained the language Seer had proposed hours earlier.

31. After receiving Seer's comfort letter, Credito Lombardo began working with MCE to document the proposed financing transaction. On March 24, 2021, both lender and borrower executed the initial Agreements, including two credit facilities providing MCE with access to as much as €5.2 million to fund new originations.

32. One week later, on March 31, 2021, Credito Lombardo and MCE entered into several additional Agreements, including (i) a so-called framework agreement providing for MCE's assignment to Credito Lombardo on a non-recourse basis of certain monetary receivables derived from personal loans made by MCE, and (ii) a collection mandate governing MCE's collections of the assigned receivable.

33. In early 2022, Credito Lombardo requested another comfort letter from Seer in connection with its agreement to extend the term of the Agreements. On March 30, 2022, Seer provided its second comfort letter, which contained the same language Seer had inserted into the first letter: "Seer Capital is aware of the terms and conditions negotiated and under negotiation between MCE Finance and Credito Lombardo Veneto and intends to continue with its normal practice of causing S.C.O Iloans to supports [sic] the obligations of MCE Finance, including those undertaken under the Agreements."

34. Finally, in April 2023, Seer agreed to provide a third comfort letter, which Credito Lombardo had again requested in connection with another round of extensions to the term of the Agreements. Seer's executed letter, dated April 19, 2023, included the same language set forth in Seer's first two comfort letters: "Seer Capital is aware of the terms and conditions negotiated and under negotiation between MCE Finance and Credito Lombardo Veneto and intends to continue with its normal practice of causing S.C.O Iloans to supports [sic] the obligations of MCE Finance, including those undertaken under the Agreements."

35. Seer's statement in all three letters setting forth its intent to continue with its normal practice of causing SCO to support MCE's obligations was not a guaranty of those obligations. Nor was it ever intended to be one. Instead, it was merely a non-binding expression of Seer's intent on the dates it made the statement.

36. The statement was plainly accurate: Between February 1, 2021, when Seer provided its first comfort letter; and October 1, 2024, when SCO made its final capital contribution to MCE, Seer caused SCO to contribute more than €12 millions to fund MCE's operations. Seer received no dividends or other remuneration from MCE.

37. Notwithstanding Seer's significant financial support, MCE's financial condition continued to deteriorate. Yet when Credito Lombardo agreed with MCE in February 2024 to extend the Agreements for an additional year, it did not request an updated comfort letter from Seer, even though none of the prior letters covered what would turn out to be the final renewal agreement.

38. By letter dated January 31, 2025, Credito Lombardo informed MCE that it would not be renewing the Agreements, a decision Credito Lombardo attributed to MCE's purported breaches of those contracts. In that letter, Credito Lombardo claimed MCE's outstanding debt under the Agreements was €1,348,996, which it demanded MCE pay within five days. Credito Lombardo also reserved the right, to the extent MCE failed to satisfy that obligation, to sue not only MCE for breach of the Agreements, but also Seer based on representations set forth in the comfort letters.

39. Following receipt of that demand letter, MCE made no further payments to Credito Lombardo under the Agreements.

40. On June 17, 2025, Credito Lombardo's U.S.-based counsel sent a demand letter to Seer and SCO, stating that it had been retained to "pursue claims arising from the demise, insolvency, and defaults of [MCE Finance]." The letter expressly references the comfort letters as the basis for at least some of Defendant's purported claims.

41. Seer responded through counsel on June 23, 2025, rejecting the notion that Seer or SCO could possibly be liable to Credito Lombardo and noting further that they would consider any claims Credito Lombardo might assert against them to be "baseless and potentially frivolous."

42. Seer's response was met by over four months of radio silence. But on November 3, 2025, Seer received an email from Paolo Gesa, who only recently had been installed as Credito Lombardo's chief executive officer. In his email, Gesa warned that if Seer did not contribute funds to the restoration of Credito Lombardo's capital, it would have "no alternative but to pursue all available legal remedies." Like the June 2025 letter from Defendant's counsel, Gesa expressly referenced the comfort letters, which he stated "explicitly indicated [Seer's] commitment to financially support MCE Finance, thereby reassuring [Credito Lombardo] about the solidity and reliability of your subsidiary."

**CLAIM FOR RELIEF**
(Declaratory Judgment pursuant to 28 U.S.C. 2201(a))

43. Seer hereby repeats and realleges each and every allegation in Paragraphs 1 through 42 above and incorporates them by reference as though fully set forth herein.

44. Credito Lombardo has demanded that Seer "contribute to restoring Credito Lombardo's capital," and expressly relied on the comfort letters as the source of Seer's purported liability for MCE's outstanding obligations under the Agreements.

45. Seer did not agree to undertake any obligation in the comfort letters, let alone an obligation to indemnify Credito Lombardo for any losses arising out of the Agreements.

46. Seer thus rejected Credito Lombardo's demand for payment of MCE's outstanding debt. Credito Lombardo, however, has continued to threaten claims against Seer to enforce the comfort letters.

47. Accordingly, a justiciable controversy exists between the parties regarding Credito Lombardo's contention that Seer committed in the comfort letters to serve as guarantor of MCE's obligations under the Agreements.

48. The Court's judgment in this action should resolve the dispute by providing a clear declaration of the parties' respective rights and obligations, if any, under the comfort letters.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Seer Capital Management LP respectfully requests this Court enter a judgment against Defendant Credito Lombardo Veneto S.p.A.:

i. Declaring that Seer has no obligations under the comfort letters to provide, or cause SCO to provide, any additional financial support to MCE;

ii. Declaring that Seer has no obligations to Credito Lombardo under the comfort letters; and

iii. Granting such other and further relief as this Court deems just and proper.

Dated: January 7, 2026

Respectfully Submitted,

CYRULNIK FATTARUSO LLP

Brian T. Kohn
Ian M. Dumain
55 Broadway, Third Floor
New York, NY 10006
(646) 844-2466
bkohn@cf-llp.com
idumain@cf-llp.com

*Counsel for Plaintiff Seer Capital Management LP*

11