DORSEY
DORSEY + WHITNEY LLP

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**ANTHONY P. BADARACCO**
**Partner**
**(212) 415-9354**
**badaracco.anthony@dorsey.com**

November 6, 2026

By **November 13, 2026**, Seer/SCO shall file any response. So Ordered.

Dated: November 9, 2026
New York, New York

**BY ECF**

Honorable Lorna G. Schofield
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *Seer Capital Management LP v. Credito Lombardo Veneto S.P.A.*, Civil Action No. 1:26-cv-00085 (S.D.N.Y.)

Dear Judge Schofield:

Credito Lombardo Veneto S.P.A. ("CLV") requests a pre-motion conference and leave to move for sanctions and remedial discovery against Seer Capital Management LP ("Seer") and S.C.O. ILoans, LLC ("SCO") (collectively, "Seer/SCO") for failure to preserve, collect, and/or produce ESI from three critical sources: (1) MCE Finance S.p.A. ("MCE"), an entity majority-owned and controlled by SCO; (2) Locam S.r.l. and Locam Gestioni S.r.L., (collectively, "Locam") affiliates owned/controlled by SCO and which hold highly relevant information; and (3) texts from principals at Seer/SCO.

Seer brought this lawsuit seeking a declaration regarding its obligation to pay sums owed to CLV by MCE, an entity Seer controlled through the 90% interest held by SCO and Locam. Discovery has confirmed that Seer/SCO induced CLV to lend millions to MCE, while misleading CLV about its financial position and intentions. New evidence shows that, with Seer/SCO's knowledge, MCE's CEO, Vincenzo Giacomini, was mismanaging the company, providing unreliable financials, and improperly diverting funds, including funds earmarked for CLV. Seer/SCO became aware of Giacomini's conduct in 2024 but allowed him to remain in that position until July 2025, the month MCE went into involuntary liquidation, all while masquerading that Seer's support remained unchanged. CLV's claims are set forth in a proposed amended pleading (Dkt. 94).

On June 17, 2025, while Seer/SCO were still managing MCE, CLV sent Seer a written demand and preservation notice ("Notice"). The Notice extended to people or entities "who operate and control [Seer/SCO] or are otherwise connected to these matters and those entities." Seer transmitted the Notice to MCE, through Giacomini, and Locam, through Alessandro Maione, who served in multiple roles, including as Seer's consultant, Locam's CEO and MCE's Board Chair. Seer took no further steps to preserve/collect ESI from MCE/Locam.

Seer knew the importance of MCE/Locam ESI even before the Notice. Maione was Seer's "man on the ground." Seer knew Maione used his Locam email for MCE business and had no separate Seer/SCO email. Yet, Seer/SCO has produced no emails from the Locam server.

As for MCE, Seer/SCO's duty to preserve its ESI is equally clear since it is evident that Seer learned Giacomini was falsifying MCE's financial records and diverting CLV funds, and that legal action was likely. In October 2024, Seer's CEO, Philip Weingord, stated that he believed it was clear that Giacomini had stolen up to $5 million. Seer/SCO knew as early as January 2025 that MCE's ESI would show where the funds went. Those funds accumulated to €8 million earmarked specifically for CLV by May 2025. As of January 18, 2025, Seer was aware of Giacomini's diversions of CLV's funds because it caused its entities (Locam/SCO) to file a formal complaint against him with MCE's Board of Auditors relating to that very conduct. (It has recently been revealed that Seer caused SCO to bring a civil lawsuit against Giacomini for this misconduct. Seer refused to produce that lawsuit prior to depositions. Seer is now stating it will be produced at some point.) Despite clear obligations, all data on MCE's servers was "lost" in July 2025 when liquidation started.

In a separate lapse, Seer did not take steps to preserve texts from key individuals. Andrew Dominus, Seer's General Counsel in charge of retention efforts, did not even search his own iPhone. Nor did he ask Weingord whether he communicated via text regarding MCE or seek texts from Maione or Giacomini. It remains unclear if these can be recovered.

A party must retain documents within its possession, custody, or control. Documents are within a party's "possession, custody, or control" if the party has the legal right to obtain them on demand. *Gordon Partners v. Blumenthal*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007); *Riddell Sports v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994). The duty to preserve arises when litigation is reasonably foreseeable. It extends to all evidence the party knows or reasonably should know will be relevant evidence in a pending, probable, or likely lawsuit, even though no discovery request or preservation order has been made. *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y. 2010). Affirmative steps are required to prevent inadvertent spoilation. *Id.* at 24.

On October 30, Seer/SCO agreed to request access to Locam's emails and Locam personnel's MCE-related texts. Because Maione conducted MCE business through his Locam account, eventual production may mitigate—but not eliminate—prejudice from unavailable MCE ESI; it wouldn't reconstruct communications exclusively among Giacomini and others at MCE. Remedial sanctions are necessary, including further testimony from Maione and Richard D'Albert at Seer/SCO's expense.

Unlike Locam's ESI, Seer/SCO claim they cannot produce MCE's ESI. Dominus testified he does not know how Seer/SCO would obtain MCE's emails. Seer/SCO maintain that after MCE entered liquidation, MCE's ESI became controlled by the Liquidator. None of Giacomini's emails (other than those involving Seer) are available because they were not preserved and are now in the Liquidator's possession, if they still exist at all.

DORSEY
DORSEY + WHITNEY LLP



Discovery also revealed that D'Albert had an MCE email account, a fact Dominus had not known. While Seer/SCO claims that account was not used, discovery shows that at least some financial information was sent to that email. Neither these nor Giacomini's emails can be reconstructed from Seer/SCO custodians alone and MCE's ESI cannot be replaced through discovery from other sources.

Even assuming Seer/SCO did not have possession or custody over MCE's servers (they did), they had the right, authority, or ability to obtain the data. A party that cannot preserve relevant evidence still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of evidence if litigation involving that evidence is anticipated. *In re WRT Energy Secs. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y. 2007).

Seer/SCO's failure to preserve MCE's ESI has caused a loss of relevant evidence bearing directly on what happened to CLV's funds, circumstances surrounding liquidation, and CLV's ability to obtain discovery. Seer's failure to search for texts based on the assumption that none existed has caused prejudice. Depending on what is learned with respect to the ability to now recover and produce texts, appropriate sanctions should be imposed, including re-opening depositions of individuals whose texts were not produced.

CLV raised these issues promptly after they were discovered during Maione's deposition, in a letter sent to Seer/SCO on October 5. CLV continued the conferral on October 26. On November 3, the parties conferred via video conference. Seer/SCO committed to search for Maione emails on Locam's server and relevant texts but has not committed to searching for or producing any other Locam documents/custodians, asserting that Maione was the sole individual completing MCE-related work using a Locam account. But several individuals with Locam emails are in Seer/SCO's own production, so a search of Maione's data may not be sufficient.

Although CLV awaits Seer/SCO's production of Locam ESI, the parties remain at an impasse regarding the consequence of their failure to preserve/search MCE's ESI.

CLV intends to seek relief including: a finding that Seer/SCO failed to take reasonable steps to preserve ESI; appropriate curative measures for prejudice; and if warranted after briefing, adverse inference or evidentiary preclusions. CLV respectfully requests a pre-motion conference and leave to brief its motion.

Respectfully submitted,

*/s/ Anthony P. Badaracco*

Anthony P. Badaracco
Hannah R. Livingston
Dorsey & Whitney LLP
1301 Avenue of the Americas
New York, NY 10019
badaracco.anthony@dorsey.com
livingston.hannah@dorsey.com

and

Kent J. Schmidt (admitted *pro hac vice*)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
(714) 800-1445
schmidt.kent@dorsey.com